UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81228-CIV-MATTHEWMAN

DANIEL MILEY,

           Plaintiff,

v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security Administration,

           Defendant

_____/

FILED BY _____KJZ_____ D.C.

Jan 20, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT [DEs 24, 25]

THIS CAUSE is before the Court upon Plaintiff, Daniel Miley's ("Plaintiff") Motion for Summary Judgment [DE 24], and Defendant, Andrew Saul, Commissioner of Social Security Administration's ("Defendant") Motion for Summary Judgment [DE 25]. The motions are fully briefed [DEs 26, 27, 30] and are ripe for review. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff and whether the correct legal standards have been applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## I. FACTS

On December 18, 2017, Plaintiff protectively filed an application for child's insurance benefits based on disability and also protectively filed an application for supplemental security income. [R. 15].[2] In both applications, Plaintiff alleged disability beginning August 1, 2010. [R.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

[2] All references are to the record of the administrative proceeding filed by the Commissioner at Docket Entry 22.

15]. The claims were denied initially and upon reconsideration. [R. 15]. Following a hearing on September 9, 2019, the Administrative Law Judge ("ALJ"), Rossana L. D'Alessio, issued a decision on October 1, 2019, denying Plaintiff's request for benefits. [R. 15-16]. A request for review was filed by Plaintiff with the Appeals Council and denied on December 2, 2019. [R. 1-6].

A.   Hearing Testimony

The ALJ held a hearing on September 9, 2019. [R. 33]. Plaintiff was 30 years old at the time of the hearing. [R. 38]. His testimony established the following facts.

Plaintiff completed the tenth grade in school. [R. 38]. He took regular classes. [R. 38]. The reason that Plaintiff never finished high school is that the principal got into trouble, and the school closed down. [R. 40]. However, even before the charter school closed down, Plaintiff was failing a "work class" which required him to get a job. [R. 42]. After he left the charter high school, he went to work. [R. 40]. He did try to participate in a program to get a GED at a local college, but he never finished and went back to work again. [R. 40]. The reason he quit the GED program is that his family moved farther away from the college, and it was harder for him to find transportation to and from school. [R. 41]. Plaintiff also repeated the sixth grade multiple times. [R. 43].

At the time of the hearing, Plaintiff was seeing three doctors—a psychiatrist, an infectious disease specialist, and a doctor for his headaches. [R. 43]. He was seeing the psychiatrist for therapy and coping skills. [R. 43]. Plaintiff also believed he had something "kind of like schizophrenia." [R. 43]. The psychiatrist, Dr. Sahadeo, prescribed Plaintiff medication for panic attacks he gets when too excited or too emotional. [R. 43-44]. Dr. Suarez, the medical doctor, prescribed medication for Plaintiff's HIV. [R. 44]. Dr. DaSilva prescribed pain medication for

Plaintiff's headaches. [R. 44]. According to Plaintiff, the medication slowed down the pain caused by his headaches. [R. 45].

Plaintiff lived with his mom at the time of the hearing and had lived with her for the past four or five years. [R. 45]. In 2011, he lived alone and was "okay." [R. 45]. However, his mother came over pretty often to check on him and make sure that he had groceries and a clean home. [R. 46].

On an average "good" day, Plaintiff gets up about 9:00 a.m., visits with friends for a few hours, and then eats, watches television, naps, and stays in the house. [R. 46]. About four days per week, he just wants to stay in bed in a dark room alone. [R. 46]. He does not go to social events outside of the house. [R. 47].

Plaintiff does not have a driver's license and has never had one. [R. 41]. He last worked at UPS first in labeling packages and then in loading trucks for less than a month in early 2018. [R. 38-39, 48]. Plaintiff got frustrated when he was expected to load boxes that weighed over 200 pounds by himself and ultimately quit. [R. 49-50]. In 2012, Plaintiff worked as a "lead out" for Palm Beach Kennel Club for about four or five months. [R. 39]. He has also worked at Panera and Tijuana Flats. [R. 51]. Additionally, he has held some temporary jobs for temp agencies. [R. 52]. He has trouble keeping jobs because he gets distracted and "can't take the heat." [R. 47, 52].

Dr. Sahadeo previously diagnosed Plaintiff with depression. [R. 53]. Plaintiff also finds himself in his "own world" at times and speaks to a male voice that he hears in his head. [R. 53]. The voice is "like an ego or something." [R. 53]. Dr. Sahadeo did not "really say anything" when Plaintiff told him about hearing the voice. [R. 54].

Jeannine Salek, the vocational expert ("VE"), testified at the hearing. [R. 54]. The ALJ first

posed a hypothetical in which an individual of the same age and education as Plaintiff who is at a medium work level could lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; could not be around loud noises or bright lights; could carry out simple, routine tasks with occasional interpersonal interaction with coworkers and the public; and could not have any fast-paced, high production demands. [R. 54-55]. The vocational expert explained that such an individual could perform the following unskilled SVP 1 or 2 jobs: laundry worker, cleaner, and dining room attendant. [R. 55]. The vocational expert also stated how many of each type of job exists nationally. [R. 55].

Plaintiff's counsel questioned the vocational expert next. [R. 55]. The vocational expert testified that the reasoning level for each of the three jobs was a level 2 as there really are no jobs for reasoning level 1. [R. 55]. She also testified that, if the hypothetical individual were off task 20% of the time, those three jobs would be precluded because 15% "is the maximum off task. Over and above that on a consistent level, the individual would not be able to maintain a job." [R. 56]. The vocational expert further explained that, if a person were to miss two or more days per month, those three jobs would be precluded. [R. 56]. Finally, she stated that no unskilled jobs permit an individual to work in complete isolation, but rather there is always a group area with coworkers. [R. 57].

Plaintiff's counsel explained that Plaintiff's mother was available to testify at the hearing, but the ALJ responded that "I don't, I don't think that's going to really matter." [R. 57].

## B.   Medical Record Evidence

In reaching her decision to deny Plaintiff's benefits, the ALJ reviewed the medical evidence of record, only the relevant portion of which is summarized chronologically below.

Plaintiff saw Dr. Womesh C. Sahadeo, a psychiatrist, from August 1, 2016, through August 9, 2018. [R. 304-17, 336-366, 399-401]. Dr. Sahadeo's progress notes are difficult to read, but the doctor consistently checked certain boxes regarding Plaintiff's suicidal ideations, homicidal ideations, anxiety, appearance, motor skills, speech, affect, mood, judgment, incident, thought progression, thought content, and orientation. [R. 304-17, 336-366, 399-401].

In a Disability Determination Explanation at the Initial Level, Jane Cormier, Ph.D., found on February 13, 2018, that Plaintiff suffered from the medically determinable impairments of asymptomatic HIV and depressive, bipolar and related disorders. [R. 63]. She then determined that there was insufficient evidence to substantiate the presence of the depressive, bipolar, and related disorders. [R. 63]. Dr. Cormier explicitly found that Plaintiff has a history of depression but that there is "insufficient mental MER to assess for the CDBD claim." [R. 63]. In other words, Plaintiff has a "medically determinable impairment" that "does not precisely satisfy the diagnostic criteria above." [R. 64]. Dr. Cormier determined that Plaintiff has mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing himself. [R. 64]. She also concluded that the "statements and allegations are no greater than partially consistent with the objective data; that there may be symptoms of depression and anxiety but no evidence of schizophrenia or of limitations to the degree stated by claimant or mother." [R. 64].

In her Mental Residual Functional Capacity Assessment of Plaintiff, Dr. Cormier noted that Plaintiff had sustained concentration and persistence limitations and was "moderately limited" in his ability to maintain attention and concentration for extended periods. [R. 67]. She also found

that Plaintiff was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 67]. Dr. Comier explained that Plaintiff "may have some difficulty w[ith] sustained attention and concentration; may experience occasional interference during the workday/week due to psychologically-based symptoms." [R. 68]. Finally, Dr. Comier explained that Plaintiff "may have some difficulty with attention and concentration for extended periods of time but appears capable of performing both simple and detailed tasks on a reasonable sustained basis." [R. 68]. Plaintiff was ultimately determined to be not disabled. [R. 70].

On March 2, 2018, Dr. Sahadeo drafted correspondence stating that Plaintiff had been diagnosed with Major Depression and Panic Disorder and that his current medications were Celexa 20mg HS, Xanax 2mg BID, and Restoril 30mg HS. [R. 318].

In a Disability Determination Explanation at the Reconsideration Level, David Tessler, Ph.D., found on May 1, 2018, that Plaintiff suffered from the medically determinable impairments of asymptomatic HIV and depressive, bipolar and related disorders. [R. 90]. Dr. Tessler found that Plaintiff has a "medically determinable impairment" of depressive, bipolar and related disorders that "does not precisely satisfy the diagnostic criteria above." [R. 90]. Dr. Tessler determined that Plaintiff has mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing himself. [R. 90-91]. He also concluded that the "statements and allegations are no greater than partially consistent with the objective data; that there may be symptoms of depression and anxiety but no evidence of

6

schizophrenia or of limitations to the degree stated by claimant or mother." [R. 91].

In his Mental Residual Functional Capacity Assessment of Plaintiff, Dr. Tessler noted that Plaintiff had sustained concentration and persistence limitations and was "moderately limited" in his ability to maintain attention and concentration for extended periods. [R. 94]. He also found that Plaintiff was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 94-95]. Dr. Tessler explained that Plaintiff "may have some difficulty w[ith] sustained attention and concentration; may experience occasional interference during the workday/week due to psychologically-based symptoms." [R. 95]. Finally, Dr. Tessler explained that Plaintiff "may have some difficulty with attention and concentration for extended periods of time but appears capable of performing both simple and detailed tasks on a reasonable sustained basis." [R. 95]. Plaintiff was ultimately determined to be not disabled. [R. 97].

On April 16, 2019, Dr. Sahadeo drafted a Work Status Report, which stated that Plaintiff was not able to work because he was anxious, depressed, dysphoric and withdrawn. [R. 412]. Dr. Sahadeo also noted that Plaintiff was unable to be around people, easily agitated and unpredictable. [R. 412].

On August 22, 2019, Dr. Sahadeo completed a Supplemental Report and Mental Residual Functional Capacity Assessment. [R. 427-30]. In the Supplemental Report, Dr. Sahadeo explained that he had been treating Plaintiff since August 11, 2016 and had met with him more than 20 times. [R. 427]. Sometimes Plaintiff reported being "okay," but he was actually observed looking anxious on most visits. [R. 427]. Dr. Sahadeo opined that Plaintiff is stable but that he would not be able

to work at a steady pace—even if the activity were of a simple nature. [R. 427]. He also opined that Plaintiff could not "handle the stress of even a simple job" and that Plaintiff "has social limitations such that he could not function in a situation where he was around bosses, co-workers, and customers during an eight hour day." [R. 427]. Finally, Dr. Sahadeo stated that Plaintiff could not "complete a work day without becoming off-task (i.e. losing concentration) at least 20% of the time. He has intrusive thoughts and internal stimuli." [R. 427].

In Dr. Sahadeo's Mental RFC Assessment dated August 22, 2019, he found that Plaintiff has all moderate and marked limitations, but no mild or extreme limitations. [R. 428-430]. In relevant part, he determined that Plaintiff has moderate limitations in the ability to carry out very short and simple instructions and to make simple work-related decisions. [R. 428-29]. He found that Plaintiff has marked limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. [R. 428-29].

On August 27, 2019, Randolph Russ, Ph.D. completed a report concerning Plaintiff. [R. 432-34]. He explained that, on August 24, 2019, he performed a full psychological evaluation on Plaintiff using the Minnesota Multiphasic Personality Inventory. [R. 433]. Dr. Russ determined that Plaintiff's "HS," Hypochondriasis Scale, was significantly elevated, which indicates "pessimistic, sour on life, and evidencing long-standing personal inadequacy and ineffectiveness."

[R. 433]. Plaintiff's "D," Depression Scale, was "significantly high," which demonstrates that he is "cynical, whiny, demanding and generally negative and pessimistic." [R. 433]. Dr. Russ noted that Plaintiff was "quite negative in his overall view of life, which contributes to his 'depressed' outlook on life." [R. 433]. Dr. Russ's report also discussed Plaintiff's elevated "Hy," Hysteria Scale; "Pd," Psychopathic Deviate Scale; "Mf," Masculinity/Femininity Scale; "Pa," Paranoia Scale; "Pt," Psychasthenia Scale; and "Si," Social Introversion Scale. [R. 433]. Dr. Russ opined that Plaintiff's "Sc," Schizophrenia Scale, was "extremely elevated," which "indicates that he feels alienated and remote from his environment, which may reflect an actual psychotic process or situational or [ ] personal distress, which he is severely under." [R. 433].

Dr. Russ next opined that the MMPI "clearly demonstrates" Plaintiff is "in no way suitable for any work psychologically, or physically. It is doubtful that he will show much improvement in these areas that would rehabilitate his abilities, but these disabilities are long lasting." [R. 433]. Dr. Russ also stated that it "clearly" appeared that Plaintiff suffered from paranoid schizophrenia. [R. 433]. He explained that Plaintiff "may" suffer from psychotic features. [R. 434]. Dr. Russ determined that the "outlook for this patient is extremely severe, and he needs treatment for this condition, continually." [R. 434]. He also found that he could not recommend Plaintiff for work as he could "easily injure himself or others and may hasten or cause his death." [R. 434].

C.   ALJ Decision

The ALJ issued her decision on Plaintiff's claim for benefits on October 1, 2019. [R. 15-26]. The ALJ first found that Plaintiff had not attained the age of 22 as of August 1, 2010, the alleged onset date. [R. 17]. She next found that Plaintiff had not engaged in substantial gainful activity since August 1, 2020. [R. 17]. The ALJ determined that Plaintiff has the following severe

impairments: human immunodeficiency virus (HIV) positive, headaches not intractable, depression and panic disorder [R. 17]. She determined that Plaintiff's seborrheic dermatitis is nonsevere and Plaintiff's alleged eye problem and schizophrenia are non-medically determinable impairments. [R. 18]. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 18]. The ALJ determined that Plaintiff had the following Residual Functional Capacity ("RFC"):

> to perform medium work as defined in 20 CRF 404.1567(c) and 416.967(c) except no loud noises or bright lights; simple, routine tasks with occasional personal interaction with coworkers and the public, and no fast-paced, high production demands.

[R. 20].

The ALJ attested that she had considered all of Plaintiff's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as all of the opinion evidence. [R. 20]. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements considering the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [R. 21]. She further found that Plaintiff's statements about intensity, persistence and the limiting effects of his symptoms were inconsistent with the objective medical evidence. [R. 21].

The ALJ concluded that the findings of State agency psychological consultants Jane Cormier, PhD, and David Tessler, PsyD, from February 12, 2018, and May 1, 2018, were persuasive. [R. 23]. She concluded that the findings of State agency medical consultant Robert

Fields, M.D., from May 3, 2018 were persuasive overall, but that Plaintiff was "slightly more limited in that he should not work with loud noises or bright lights." [R. 23]. The ALJ found that the opinion of Dr. Womesh Sahadeo provided on April 16, 2019, was not persuasive because it was not consistent with the evidence of record. [R. 23-24]. The ALJ also found that the opinion of Dr. Sahadeo provided on August 22, 2019, was not persuasive because it was not consistent with the evidence of record and was not supported by the progress notes. [R. 24]. Finally, the ALJ noted that she "did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520(c) and 416.920b(c)." [R. 24].

The ALJ explained that Plaintiff has no past relevant work, was a younger individual on the established disability onset date, has a limited education, and is able to communicate in English. [R. 25]. The ALJ noted that transferability of jobs skills was not an issue because Plaintiff does not have past relevant work. [R. 25]. The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and relied on the vocational expert's testimony. [R. 25-26]. She found that Plaintiff has not been under a disability from August 1, 2010 though the date of the decision. [R. 26].

## II. <u>MOTIONS FOR SUMMARY JUDGMENT</u>

In his Motion for Summary Judgment, Plaintiff argues that there was not substantial evidence to support the ALJ's denial of benefits, that the RFC assessment contained in the hypothetical to the vocational expert was incomplete, that the ALJ erred in giving too little weight to the opinion of Plaintiff's treating psychiatrist, that the ALJ did not adequately address the opinions from Dr. Randolph Russ, Ph.D., and that the ALJ erred in not permitting Plaintiff's mother to testify at the hearing. [DE 24-1].

In Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment, Defendant asserts that the correct standards of law have been applied and the findings are supported by substantial evidence. [DE 25].

Plaintiff has also filed a reply [DE 27], and Defendant has filed a sur-reply [DE 30].

## III. <u>RELEVANT LAW</u>

Judicial review of the factual findings in disability cases is limited to determining whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997)). Courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining [that] the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1260 (11th Cir. 2007) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)-(f). The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry concludes. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ finds that claimant does not suffer from a severe impairment or combination of impairments, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Step three requires the ALJ to compare the claimant's severe impairment(s) to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that, if they are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the claimant's impairments prevent him or her from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a *prima facie* case of disability is established. 20 C.F.R. § 404.1520(e). The burden then shifts to the ALJ to show at step five that, despite the claimant's impairments, he or she is able to perform work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f); *Phillips*, 357 F. 3d at 1239. In order to determine whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either apply the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app.2, or utilize the

13

assistance of a vocational expert. *See Phillips*, 357 F. 3d at 1239-40.

## IV. **ANALYSIS**

### (a) Whether the ALJ Erred in Failing to Pose a Complete Hypothetical Question to the Vocational Expert Containing All of Plaintiff's Limitations

Plaintiff argues that the ALJ's Step V conclusion was erroneous because she failed to address the issues of being "off task" and "unexcused absences" in her hypothetical question to the vocational expert. [DE 24-1 at 10]. Plaintiff relies on Dr. Sahadeo's opinion that Plaintiff would be off task at least 20% of the time and absent four times per month. *Id.* Plaintiff also relies on the State Agency's psychologist's statement, Plaintiff's own work history, and his testimony. *Id.* According to Plaintiff, the relevant case law makes "it clear that in circumstances where the evidence establishes a mental disorder causing some limitations which would impact concentration and attendance, the ALJ must address off task limitations, and the frequency of absences." *Id.*

In response, Defendant argues that, since substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and the ALJ's hypothetical question to the VE included all the limitations in the ALJ's RFC finding, the ALJ properly relied on the VE's testimony in finding that Plaintiff could perform other work. [DE 17 at 17]. Defendant also contends that the ALJ properly found Dr. Sahadeo's statements about Plaintiff being off task and having unexcused absences to be unpersuasive. *Id.* at 17-18. Defendant asserts that the "ALJ was not required to include limitations in the hypothetical question to the VE that were unsupported by or inconsistent with the record, nor was the ALJ required to accept the VE's testimony in response to hypothetical questions that included such unsupported or inconsistent limitations." *Id.* at 18. Finally, Defendant explains that, while Dr. Tessler "opined that Plaintiff might have some difficulty with attention and concentration for extended periods of time," Dr. Tessler found that he was "still capable of

performing both simple and detailed tasks on a reasonably sustained basis" and that the "ALJ fully accounted for Plaintiff's limitations in the RFC finding by including a limitation to simple tasks." *Id.* at 19.

In reply, Plaintiff contends that Defendant is improperly assuming that, since the ALJ omitted any impairment as to Plaintiff's ability to complete a normal workday and work week, the ALJ was finding no impairment. [DE 27 at 3-4]. Plaintiff also asserts that the "fact that some rational [sic] might support the RFC contained in the ALJ's hypothetical is especially suspect in this case where one of the state agency consultants on whom the ALJ relied (Dr. Tessler) assigned a limitation in the ability to complete a normal workday/work week." *Id.* at 4.

First, in considering social security appeals, courts are not permitted to "decide the facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Second, as stated below, the ALJ was not under any obligation to include Dr. Sahadeo's opinions that Plaintiff would off task 20% of the time and that he would have unexcused absences in the RFC as she properly found Dr. Sahadeo's opinions to be unpersuasive.

Third, the Court rejects Plaintiff's argument that the ALJ should have added information about Plaintiff being off task and having unexcused absences at work to the hypothetical she posed to the vocational expert since Dr. Cormier and Dr. Tessler found Plaintiff to be "moderately limited" in his ability to maintain attention and concentration for extended periods and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods. The Social Security Administration's Programs Operations Manual System (POMS) clarifies that the boxes checked by doctors are only a portion of a worksheet that "does not constitute the [doctors' actual] RFC assessment." POMS DI § 24510.060(B)(2). "Checking the box 'Moderately Limited' means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation." *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (citing § 24510.063(B)(2)). "After checking the boxes as an 'aid,' *id.* § 24510.060(B)(2), a doctor is then required to detail his actual RFC assessment." *Land*, 494 F. Appx. at 49 (citing *id.* § 24510.060(B)(4)). Here, Dr. Tessler found that Plaintiff was "still capable of performing both simple and detailed tasks on a reasonably sustained basis"; therefore, it is clear that the ALJ accounted for Plaintiff's limitations in the RFC finding by including a limitation to simple tasks.

Fourth, the Court has reviewed the two cases relied on by Plaintiff—*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), and *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020). In *Samuels*, the ALJ first found that the plaintiff's bipolar disorder was a "severe impairment[ ]" that "caused significant limitation in the claimant's ability to perform basic work activities." 959 F.3d at 1046. However, when the ALJ posed the hypothetical to the vocational expert, the ALJ "nowhere indicated that medical evidence suggested [the plaintiff's] ability to work was affected by that impairment. Nor did any of the hypothetical restrictions implicitly account for [the plaintiff's] mental limitations as reflected in the record." *Id.* The court further explained that "the ALJ did not account for unexcused absences or time spent off-task, which were limitations caused by [the plaintiff's] bipolar disorder that were reflected in the record." *Id.* Here, Plaintiff does not suffer from bipolar disorder, and, as explained above, there is

16

a dearth of record evidence regarding his mental limitations—i.e. that he would be off task and would have unexcused absences.

The case of *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, is also distinguishable. In that case, the Eleventh Circuit found that "[s]evere or not, the ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so. And as a result of this error, we cannot say that the ALJ's earlier error in finding Schink's mental impairments to be non-severe was harmless." *Id.* at 1269-70. The Eleventh Circuit further stated, "[i]n short, the ALJ provided no real assessment of how Schink's mental impairments—including depression, mania, and anger—affected his ability to work. The assessment was therefore inadequate." *Id.* at 1270. Here, Plaintiff has not demonstrated that the ALJ failed to consider any of Plaintiff's mental impairments in the RFC. Moreover, the ALJ clearly did consider Plaintiff's depression and panic disorder when creating the RFC. *See* R. 22.

In sum, and based on the foregoing, the Court finds no error in the hypothetical the ALJ posed to the vocational expert or in the ALJ's Step V conclusion.

(b) <u>Whether the ALJ Erred in Finding that the Opinion from Plaintiff's Treating Psychiatrist was not Persuasive</u>

Plaintiff asserts that the ALJ erroneously found that Dr. Sahadeo's treatment notes did not support Dr. Sahadeo's opinion. [DE 24-1 at 12]. Plaintiff explains that "a person can be alert in a clinical setting and still suffer from disabling agitation, anxiety, and depression." *Id.* Plaintiff additionally points out that Dr. Sahadeo indicated that Plaintiff could not function in a workplace, that Dr. Sahadeo's specialty is psychiatry, and that Plaintiff visited Dr. Sahadeo multiple times over several years. *Id.*

Defendant argues that, under the new regulations, the ALJ was "not required to discuss

every factor in assessing the persuasiveness of Dr. Sahadeo's opinions, including treatment relationship or specialty. She was only required to assess persuasiveness in light of the opinions' consistency and supportability, which she did (Tr. 23). 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3)." [DE 25 at 11]. According to the ALJ, the various findings from Dr. Sahadeo's treatment notes and the notes of other providers "did not support and were inconsistent with Dr. Sahadeo's opinions of what amounted to disabling limitations, including, for example, Dr. Sahadeo's opinions that Plaintiff was unable to concentrate sufficiently to perform even simple work or to 'be around people' (Tr. 23-24, 412, 427-430)." *Id.* at 12. Defendant further maintains that Dr. Sahadeo's opinions "were inconsistent with other evidence of record in addition to the treatment notes discussed above, including the prior administrative findings of the State agency psychological consultants, Dr. Cormier and Dr. Tessler." *Id.* Finally, with regard to Dr. Sahadeo's opinion that Plaintiff could not work or "function in a workplace," Defendant asserts that this is a statement on an issue reserved for the Commissioner, so the ALJ was not required to provide any analysis about how she considered such evidence in her decision. *Id.*

In reply, Plaintiff argues that, even if Dr. Sahadeo's work status report dealt with an issue reserved for the Commissioner, "the ALJ erred by not considering that note in the context of whether Dr. Sahadeo's opinions were 'consistent' over the time span he treated [Plaintiff]." [DE 27 at 2-3]. Plaintiff also argues that the new regulations do not permit an ALJ to "rely solely on agency consultants while dismissing treating physicians in a conclusory manner." *Id.* at 3.

The Eleventh Circuit Court of Appeals has explained that an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion" but is required "to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v.*

*Barnhart*, 166 F. App'x. 410, 418-419 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The law regarding how much deference to give treating physicians has changed for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1527. Here, Plaintiff's claim was filed after March 27, 2017. The new regulations, which omit entirely the term "treating source," state that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." § 404.1520c(a). Instead, all medical opinions are to be evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion. *See id.* Moreover, the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source ... to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented. 20 C.F.R. § 404.1520c(c)(2). The other factors, which the ALJ is not required to consider, § 404.1520c(b)(2), concern the medical source's relationship with the claimant, § 404.1520c(c)(3), the medical source's specialization, § 404.1520c(c)(4), and any "other factors that tend to support or contradict a medical opinion." § 404.1520c(c)(5); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4–5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021).

Thus, under the revised regulations, which the Court is applying in this case, the ALJ must

19

articulate how persuasive he or she finds the medical opinions in the record and specify how he or she considered the supportability and consistency factors for a medical source's opinion. *See* 20 C.F.R. § 404.1520c(b). If the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record but are not necessarily the same, the ALJ must articulate how the ALJ considered other persuasive factors. *See* 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ explicitly found that the opinion of Dr. Sahadeo provided on April 16, 2019, was not persuasive because it was not consistent with the evidence of record. [R. 23-24]. The ALJ additionally found that the opinion of Dr. Sahadeo provided on August 22, 2019, was not persuasive because it was not consistent with the evidence of record and was not supported by the progress notes. [R. 24]. The ALJ then discussed the evidence that contradicted Dr. Sahadeo's opinions. [R. 23-24]. Therefore, the ALJ did sufficiently articulate how persuasive she found Dr. Sahadeo's medical opinion and did sufficiently specify how she considered the supportability and consistency factors. Finally, the ALJ properly rejected Dr. Sahadeo's opinions to the extent they commented on Plaintiff's ability to work, which is an issue reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d).

(c) <u>Whether the ALJ Erred in Failing to Address the Persuasiveness of Dr. Russ' Opinion</u>

Plaintiff explains that Dr. Randolph Russ, Ph.D., performed a full psychological evaluation of Plaintiff and administered testing which covered depression, hysteria, psychopathic deviation, psychasthenia, and social introversion. [DE 24-1 at 12]. According to Plaintiff, the ALJ's "mention of Dr. Russ's report and her apparent acceptance of some conclusions suggest that the ALJ considered Dr. Russ an acceptable medical source requiring a 'source level articulation (Sec, 20 CFR 404.1520c(b)1). Therefore, it was error to fail to then address the persuasiveness issue." *Id.*

Plaintiff contends that the ALJ erred in only accepting Dr. Russ' findings as to depression. *Id.* at 14.

Defendant asserts that, pursuant to the new regulations, "contrary to Plaintiff's argument and the case law he cites applying the old regulations, Pl.'s Br. at 12-14, the fact that Dr. Russ was an acceptable medical source within the meaning of the regulations did not trigger a duty to assess the persuasiveness of Dr. Russ's report, findings, or test results, or make 'a source-level articulation,' as Plaintiff alleges." [DE 25 at 13]. According to Defendant, "Plaintiff does not identify any actual medical opinions from Dr. Russ, so any such argument that the ALJ did not properly weigh his medical opinions is waived." *Id.* Defendant also asserts that the ALJ did not actually accept certain of Dr. Russ' findings, but rather "summarized them but discussed how many of them were not consistent with the actual treatment records from several occasions throughout the relevant period." *Id.* at 14. Defendant further argues that "Plaintiff cursorily asserts that Dr. Russ's findings were consistent with Dr. Sahadeo's opinions and inconsistent with the RFC assessment, but he fails to identify any such findings, Pl.'s Br. at 12-14, and this argument is waived." *Id.*

In her decision, the ALJ noted as follows:

The claimant indicated that he was depressed and unable to work (12F/2). The claimant had a full psychological evaluation using the Minnesota Multiphasic Personality Inventory. The test revealed the claimant was pessimistic, sour on life, cynical, whiny, demanding, suspicious, hostile, overly sensitive, unreliable, egocentric, impulsive, and has conflictual relationships among other issues (23F/3). He has reported changes in thought content and insomnia (8F/1). However, the claimant has also denied symptoms of depression or changes in thought content (14F/27). The claimant appeared anxious, agitated and depressed with a flat affect. however, he had fair hygiene, logical judgment, appropriate insight, and organized thought process, and relevant, reality based and fully oriented thought content (9F/1-9, 12; 10F/2; 12F/1-11; 13F/1-12, 15; 16F/1-3). Additionally, the claimant had normal thought content, orientation, attention, concentration, language and

fund of knowledge. He was also alert, cooperative, and appropriately interactive (2F/1; 3F/1; 11F/6; 14F/3; 20F/2; 21F/2).

[R. 22].

Dr. Russ only saw Plaintiff on one occasion—to perform a full psychological evaluation and administer testing. Plaintiff argues that the ALJ's mention of the depression portion of Dr. Russ's report demonstrates the ALJ's implicit determination that Dr. Russ is an acceptable medical source, so the ALJ was required to comply with 20 CFR 404.1520c(b)1 and assess the persuasiveness of all of Dr. Russ' findings (not just his findings regarding Plaintiff's depression) and failed to do so. Defendant disagrees.

The new regulations differentiate between five different categories of evidence, and objective medical evidence, other medical evidence, and medical opinion evidence are not the same, *see* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2017). An ALJ is only required to assess the persuasiveness of medical opinion evidence; the ALJ is not required to assess the persuasiveness of any evidence from an acceptable medical source. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnosis and prognosis, and the claimant's physical or mental restrictions." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 (11th Cir. 2021) (citing § 416.927(a)(1)). Having carefully reviewed Dr. Russ' report dated August 27, 2019, it clearly does not constitute a medical opinion. Thus, the ALJ did not err in discussing aspects of the report without discussing all of it and without assessing its persuasiveness. The Court also notes that Plaintiff does not mention this issue in his reply, so he has not responded to Defendant's argument.

(d) <u>Whether the ALJ Erred in not Permitting Plaintiff's Mother to be Called as a Witness at the Hearing</u>

Plaintiff relies on 20 CFR 404.950(e) and 20 CFR 416.1450(e) for the premise that he should have been permitted to call his mother as a witness at the hearing. [DE 24-1 at 15]. He argues that she would have testified about Plaintiff's day-to-day activities and that her Third Party Statement [R. 269] did not suffice. *Id.*

Defendant explains that the regulations relied on by Plaintiff are permissive. [DE 25 at 14]. Defendant points out that Plaintiff also has not shown that the ALJ actually denied his request to call his mother as a witness. *Id.* Further, Defendant contends that Plaintiff has not shown any prejudice because the function report drafted by Plaintiff's mother was submitted as evidence. *Id.* at 14-15.

In reply, Plaintiff contends that his counsel could not have "forced" the ALJ to permit Plaintiff's mother to testify. [DE 27 at 3]. He also argues that, if the ALJ's decision was not going to change no matter what his mother said, "this hardly projects a full and fair consideration of [Plaintiff's] claim." *Id.*

Two regulations, 20 CFR 404.950(e) and 20 CFR 416.1450(e), both pertain to witnesses at a hearing. They state as follows:

> Witnesses you call may appear at a hearing with you in the same manner in which you are scheduled to appear. If they are unable to appear with you in the same manner as you, they may appear as prescribed in § 404.936(c)(4). Witnesses called by the administrative law judge will appear in the manner prescribed in § 404.936(c)(4). They will testify under oath or affirmation unless the administrative law judge finds an important reason to excuse them from taking an oath or affirmation. The administrative law judge may ask the witness any questions material to the issues and will allow the parties or their designated representatives to do so.

20 CFR 404.950(e); 20 CFR 416.1450(e). These regulations do not in any way support Plaintiff's argument. They do not state that a plaintiff has an absolute right to call any witness he or she wishes.

Second, the Court has carefully read the transcript from the hearing. At the hearing's conclusion, Plaintiff's counsel stated, "I did have his mother out there." [R. 57]. The ALJ responded, "I don't, I don't think that's going to really matter." [R. 57]. Plaintiff's counsel did not clearly and explicitly request to present the testimony of Plaintiff's mother. In light of this lack of clarity on the part of Plaintiff's counsel at the hearing as to whether counsel truly desired to call the mother as a witness, any alleged error constituted invited error.

Third, and most importantly, Plaintiff cannot establish prejudice here. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."). The ALJ heard testimony from Plaintiff himself about his daily life. Additionally, Plaintiff's mother, Cynthia Miley, submitted a Function Report-Adult-Third Party [R. 269-277]. In that report, she described at length Plaintiff's day-to-day activities. Moreover, if, as argued in Plaintiff's reply, the ALJ had already decided that she was going to deny benefits by the conclusion of the hearing, then Plaintiff cannot possibly establish any prejudice caused by his mother not testifying at that point.

## IV. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Court finds that the record contains substantial evidence to support the denial of benefits to Plaintiff. The Court further finds that the ALJ applied the correct legal

standards. Thus, the decision of the Commissioner is **AFFIRMED**.

2.  Accordingly, Plaintiff's Motion for Summary Judgment [DE 24] is hereby **DENIED**, and Defendant's Motion for Summary Judgment [DE 25] is hereby **GRANTED**.

3.  Judgment will be entered separately.

       **ORDERED AND ADJUDGED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of January, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge

25